OPINION
{¶ 1} Appellant, Renee Schroer, appeals her sentences entered in the Richland County Common Pleas Court in Case Number 2004 CR 693D, on a charge of receiving stolen property, a fourth degree felony and Case Number 2005 CR 144D on a charge of misdemeanor falsification. These appeals are consolidated for purposes of this opinion.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In the early morning hours of August 9, 2004, Brian Garber stole a Toro Workman golf cart valued at $8,000.00 from the Pebble Creek Golf Course in Lexington, Ohio. That afternoon, Michelle Benedict contacted police and informed them that the Appellant, Renee Schroer, had the stolen golf cart at her residence.
 {¶ 3} The golf cart was recovered at the Appellant's residence. At that time, the Appellant told Deputy Stacy Dittrich that her boyfriend, Brian Garber, was the one who had stolen the cart. Brian Garber also informed Sergeant Tim Shook that he entered an unlocked barn and stole the cart.
 {¶ 4} Appellant was charged with receiving stolen property, a fourth degree felony.
 {¶ 5} Appellant was also separately charged with falsification as a result of her false testimony before the Grand Jury concerning an incident involving Brian Garber's attempt to flee police officers while she was a passenger in his vehicle.
 {¶ 6} On March 14, 2005, the Appellant entered a no contest plea to the above charges, and applied to the Richland County Prosecutor's diversion program.
 {¶ 7} On March 20, 205, Appellant's diversion application was rejected. The reason stated for such denial was "Misleading and dishonest statements at interview."
 {¶ 8} On May 23, 2005, Appellant was brought back before the trial court and a finding of guilty was made on her no contest pleas. At that time, the trial court agreed to give her another opportunity to straighten things out with the diversion program prior to sentencing, which was ultimately unsuccessful.
 {¶ 9} On July 11, 2005, the court sentenced the Appellant to two and a half (2½) years of community control, a $1,500.00 fine, and eighty (80) hours of community service on the receiving stolen property charge. (Case Number 2004 CR 693D, 2005CA0085). As community control sanctions, the trial court ordered that Appellant maintain full-time employment, submit to random alcohol/drug testing, not cohabit with any girlfriends or boyfriends with whom she engaged in sexual relations and to have no contact with Brian Garber.
 {¶ 10} On the falsification charge, she was sentenced to a suspended six (6) month jail sentence, two (2) years probation, and a $1,000.00 fine. (Case Number 2005 CR 144D, 2005CA0084). No separate conditions of probation were set forth as part of this sentence other than those set forth as part of the sentence imposed in Case Number 2004 CR 693D.
 {¶ 11} At the sentencing hearing the trial court stated the following:
 {¶ 12} THE COURT: ". . . I also have a report of pretrial supervision which says the defendant continues to ignore the no contact order with Brian Garber, the co-defendant in these two cases.
 {¶ 13} "It says Ms. Schroer plays the innocent act all the time, however she was told on several occasions to have no contact with Brian Garber and still does. Renee and Brian seem to be a very bad combination together.
 {¶ 14} "* * *
 {¶ 15} MR. THOMAS: ". . . She indicates she was not aware that there was a no contact order."
 {¶ 16} THE COURT: "She was told by me that there was a no contact."
 {¶ 17} MR. THOMAS: "She was told by you, I'm sorry."
 {¶ 18} THE COURT: "Yes, she definitely was."
 {¶ 19} MR. THOMAS: "I didn't see anything in the file that indicated there was a no contact order. In any event —"
 {¶ 20} APPELLANT: "I don't remember him saying that."
 {¶ 21} THE COURT: "That is not true. Her probation officer, her pretrial supervisor — isn't that correct, she's been told repeatedly?"
 {¶ 22} P.O. COSBY: "Yes, she has."
 {¶ 23} THE COURT: "She is not being honest with you. * * *"
 {¶ 24} "* * *
 {¶ 25} THE COURT: "I have to tell you that I have less than absolute confidence in her honesty or her commitment to be law abiding, just from what we've seen in terms of her not being willing to cooperate with that order. But I am willing to hear whatever else you have to say."
 {¶ 26} * * *
 {¶ 27} APPELLANT: "I guess I don't remember ever anybody telling me — I don't remember you telling me not to see him. You must have, but I don't remember it. And no one ever told me — Jill Bond told me after that incident happened that I wasn't supposed to see him. No one mad it clear, not even my lawyer, made it clear that I wasn't supposed to see him."
 {¶ 28} THE COURT: "Do you understand no you are not supposed to see him?"
 {¶ 29} APPELLANT: "Yeah, I completely understand now."
 {¶ 30} THE COURT: "You are standing here convicted of a felony offense because he stole property and brought it to your house and you let him keep it there. So this guy, who is your boyfriend, has given you a felony record,"
 {¶ 31} APPELLANT: "I know."
 {¶ 32} THE COURT: "And then the second offense also has to do with when you are in a car with him running from the police. You're not being altogether honest about that. You originally told the police you saw them signal, you guys took off anyway. And now you're taking the position you never saw the signal. So you've given inconsistent statements there, Renee. My suspicion is you are doing that to try to protect your boyfriend." (July 11, 2005, Sentencing T. at 2-6).
 {¶ 33} Appellant now appeals her sentence and the conditions of her probation. Appellant's assignments of error, which are identical in both appeals, are as follows:
 ASSIGNMENTS OF ERROR {¶ 34} "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT IN IMPOSING A MORE SEVERE SENTENCE ON THE DEFENDANT-APPELLANT BASED ON A MISUNDERSTANDING THAT THE DEFENDANT-APPELLANT HAD VIOLATED A NO-CONTACT ORDER.
 {¶ 35} "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT BY IMPOSING AS A CONDITION OF COMMUNITY CONTROL THAT THERE BE NO CONTACT WITH BRIAN GARBER."
 I. {¶ 36} Appellant claims the trial court erred in imposing a more severe sentence on her based on its belief that it had imposed a no-contact order.
 {¶ 37} Upon review of the record, we find that prior to the trial court's July 12, 2005, Sentencing Entry, a condition of no-contact with Brian Garber had not been imposed upon Appellant by the trial court. It does appear, however, that her pretrial supervisor, Jill Bond, notified Appellant that she was to have no contact with Brian contact.
 {¶ 38} Upon further review, we find that the trial court did impose a no-contact order as a condition of his Community Control Sanctions in its April 12, 2005, Sentencing Entry of Brian Garber in his case (2004 CR 0691D) before that court.
 {¶ 39} The trial court sentenced Brian Garber to 40 hours of community service.
 {¶ 40} Appellant contends that the trial court imposed a more severe sentence (80 hours of community service) based on its belief that she had violated a non-existent no contact order.
 {¶ 41} This Court is not concerned with the imposition of a sentence within the statutory sentencing range, even if it is more severe than that imposed on a co-defendant.
 {¶ 42} While, this Court finds that the trial court is not required to state its reasons for a sentence imposed within the authorized sentencing range pursuant to State v. Foster,109 Ohio St.3d 1, 2006-Ohio-856, we are concerned that in the case sub judice, the trial court premised Appellant's sentence on the violation of a no — contact order where there was no evidence that such order ever existed, with the exception of the un-sworn response at the Change of Plea Hearing by a non-witness, probation officer Cosby. We therefore must remand this matter back to the trial court for it to reconsider the sentence in light of the lack of a violation of such no-contact order.
 {¶ 43} Appellant's first assignments of error in both 2005CA0084 and 2005CA0084 are sustained.
 II. {¶ 44} In Appellant's second assignments of error, she claims that it is error for the trial court to impose a no-contact order with Brian Garber as a condition of her probation. We disagree.
 {¶ 45} Pursuant to R.C. § 2951.02, the trial court is granted broad discretion in setting conditions of probation. Specifically, R.C. 2951.02(C) provides that
 {¶ 46} "* * * [i]n the interests of doing justice, rehabilitating the offender, and insuring his good behavior, the court may impose additional requirements on the offender * * *.
 {¶ 47} Compliance with the additional requirements shall also be a condition of the offender's probation or other suspension." The courts' discretion in imposing conditions of probation is not limitless. See State v. Livingston (1976), 53 Ohio App.2d 195,196-197, 7 O.O.3d 258, 259, 372 N.E.2d 1335, 1337, citing UnitedStates v. Strada (D.C.Mo. 1974), 393 F.Supp. 19; People v.Dominguez (1967), 256 Cal.App.2d 623, 64 Cal.Rptr. 290;Williams v. State (Tex.Crim.App. 1975), 523 S.W.2d 953; see, also, Lakewood v. Davies (1987), 35 Ohio App.3d 107,519 N.E.2d 860, paragraph two of the syllabus. Such conditions cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty. See State v. Maynard (1988),47 Ohio App.3d 76, 547 N.E.2d 409.
 {¶ 48} In determining whether a condition of probation is related to the "interests of doing justice, rehabilitating the offender, and insuring his good behavior," courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation. See, e.g., United States v.Tolla (C.A.2, 1986), 781 F.2d 29, 32-33; State v. Maynard,supra, at paragraph two of the syllabus; State v. Livingston,supra; Howland v. Florida (Fla.App. 1982), 420 So.2d 918, 919;Rodriguez v. Florida (Fla.App. 1979), 378 So.2d 7; Nitz v.State (Alaska App. 1987), 745 P.2d 1379.
 {¶ 49} In the case sub judice, Appellant was convicted of two separate crimes which each involved Brian Garber as a co-defendant. We therefore find that the no-contact order is reasonably related to Appellant's rehabilitation and is not unduly restrictive. Moreover, the condition, rationally interpreted, relates to the crimes of which Appellant was convicted.
 {¶ 50} Appellant second assignments of error in both 2005CA0084 and 2005CA0084 are overruled.
 {¶ 51} The judgment of the Court of Common Pleas of Richland County, Ohio is hereby affirmed in part and remanded in part for further proceedings consistent with the law and this opinion.
Boggins, J., Hoffman, P.J. and Farmer, J. concur.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Richland County, Ohio is affirmed in part and remanded in part. Costs to Appellant and Appellee equally.